1



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*
August 1, 2018

Honorable Kiyo A. Matsumoto
Unites States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201

    Re:    Lovell v. United States, et. al.
                Civil Docket No. 18-1867 (KAM)(SMG)

Dear judge Matsumoto:

        The government writes to request a pre-motion conference seeking permission to file motions (1) to dismiss all defendants other than the United States under the authority of the Supreme Court's landmark decision in *Zieglar v. Abbasi,* 137 S. Ct. 1843 (2017) ("*Abbasi*") and (2) to dismiss all defendants, without prejudice, for improper service of the summons and complaint. Plaintiff alleges that during a routine border search after she arrived at JFK International Airport on a flight originating outside the country, she was subjected to a body cavity search "random[ly] . . . using 'race' as an impermissible factor." Complaint ¶41. She sues the United States, U.S. Customs and Border Protection ("CBP") and CBP Officers Parker, Munoz and three John Doe high level CBP Officers for money damages as a result of the alleged violation of her 4th Amendment right to be free from unreasonable searches and seizures and her 5th Amendment right not to be deprived of procedural and substantive due process of law. She sues under the **_alleged_** authority of *Bivens v. Six Unknown FBI Agents,* 403 U.S. 388 (1971).1

        In *Bivens,* the Supreme Court, for the first time, created an implied cause of

---

1 Of course, the United States cannot be sued under *Bivens,* due to sovereign immunity. But it may be sued under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, et. seq., and we construe her action against the U.S. as an action under the FTCA. CBP cannot be sued under *Bivens,* only individuals can, and it cannot be sued under the FTCA or in any other way for money damages. 28 U,S.C. §2679(a). Although the government does not presently represent the high level CBP Officers John Does 1 – 3 because they have neither been identified nor personally served, the arguments raised by Munoz and Parker under *Abbasi,* apply with equal force to John Does 1 - 3. Thus, the government will ask the Court to *sua sponte* dismiss the John Does 1 - 3 as well as Officers Munoz and Parker.

action, even though Congress did not expressly create one, allowing a plaintiff to sue for money damages for the violation of his fourth amendment rights when, without a warrant and without probable cause, he was handcuffed in his own home by the defendant FBI agents. The Supreme Court itself, in the following decade, recognized two other situations in which a plaintiff could sue a federal official, as in *Bivens,* for money damages for a violation of his constitutional rights. In *Davis v. Passman,* 442 U.S. 228 (1979), the plaintiff was allowed to sue for violation of her Fifth Amendment right to due process, because she was fired from a Congressional Staff position because of discrimination. In *Carlson v. Green*, 446 U.S, 14 (1980), an inmate's estate was allowed to sue for violation of his eighth amendment right to be free of cruel and unusual punishment when prison officials were deliberately indifferent to his serious medical needs.

In *Abbasi,* the Supreme Court held that those three cases might be decided differently today, because when they were decided, the Court regularly implied a cause of action where Congress had not expressly created one, but now the law is clear that a cause of action ***usually ought not*** to be created by the courts, rather than by Congress. In the four decades since *Carlson*, the Supreme Court has consistently refused to expand *Bivens* to any situation not covered by those three cases. Implying a cause of action creates serious concerns about the separation of powers because it is the job of Congress and not the courts to weigh the reasons for and against the right to sue. *Id*. at 1854-57. Thus, *Abbasi* expressly held that there is no *Bivens* case if: (1) a plaintiff seeks to bring a suit for money damages in a *new-context* not covered by *Bivens, Davis* and *Carlson; and* (2) there are *special factors* that counsel hesitation before inferring a damages action against a federal official absent "affirmative action" by Congress. *Abbasi* at 1857. The "inquiry must concentrate on whether the Judiciary is well suited, absent Congressional action or instruction to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857-58. Thus, to be a "special factor counselling hesitation," a factor must cause a court to *hesitate* before answering that [prior] question in the affirmative." *Id.* A *Bivens* action should not be inferred if "there are sound reasons to think Congress *might* doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." Expanding *Bivens* to new contexts is "disfavored judicial activity." *Id*.

The court made clear in *Abbasi*, that "the new-context inquiry is *easily satisfied*." *Id.* at 1865 (emphasis added).   There is a new-context if the case is based on a violation of a different clause of the constitution, a different mechanism of injury or is in any other way "different in a meaningful way from [the three] previous *Bivens* cases decided by [the Supreme Court] . . . [such as] the presence of potential special factors that previous *Bivens* cases did not consider**.**" *Id.* at 1859 – 60. While this case involves the same provision of the Constitution as *Bivens* itself, as seen below, it is totally different because it involves the special factor of border security, an area that is exclusively the province of Congress and the executive branch and not of the judiciary. Indeed, whereas *Bivens* involved a person who was handcuffed in his own home without a warrant or probable cause, plaintiff was allegedly searched at the border, where by express command of Congress, no warrant or probable cause is necessary, and where anyone, even a U.S. citizen, can be subjected to routine searches, including pat down searches, without *any* showing by the government, and where even body cavity searches can be conducted based upon no greater showing than *reasonable suspicion*.   Thus, this case involves a *new*-context.

In the instant case, there are many special factors counselling hesitation. First, in 1871, Congress enacted 42 U.S.C. § 1983, which *expressly* enabled a person to sue *state officials* for money damages for a violation of his constitutional rights. As *Abassi* noted, in the 100 years leading up to *Bivens*, Congress did *not* provide a similar right of action "for plaintiffs whose constitutional rights were violated by agents of the *federal* government." *Abassi,* at 1854. That would seem to be an *intentional* omission by Congress. Second, "the existence of alternative remedies . . . usually precludes a court from authorizing a *Bivens* action." *Abbasi* at 1865. In this case, plaintiff *can* and *has* sued the United States for damages for her alleged body cavity search and that, by itself, should preclude a *Bivens* action against the individual CBP officers." *Id*.; *Vanderklok v. United States, et. al*., 868 F. 3d 189, 200-203 (3d Cir.  2017). Third, as *Abbasi* noted, "[n]ational security policy is the prerogative of the Congress and the President. See U.S. Const. Art. I, §8; Art. II, §1, §2," not the judiciary, and this is even more of a concern "when the judicial inquiry comes in the context of a claim seeking money damages rather than . . injunctive . . . relief . . . [because] the risk of personal damages liability is more likely to cause an official to second-guess difficult but necessary decisions concerning national security policy." *Abbasi* at 1861. CBP Officers protect the border by preventing drugs, weapons and other contraband from entering the country. Fourth, the existence of "legislative action suggesting that Congress does not want a damages remedy is itself a factor counselling hesitation." *Id.* at 1865. Unlike the situation with law enforcement searches inside the United States, which are governed by case law interpreting the Fourth Amendment, Congress has repeatedly enacted <u>*statutes*</u> concerning the authority of Customs Officers to search all persons, baggage, conveyances and merchandise traveling across the *border*. *See, e.g.*, 8 U.S.C. §§1225, 1357; 8 C.F.R. §287; 19 U.S.C. §§482, 1461, 1496, 1499, 1581, and 1582. Yet Congress has never created a damages remedy against CBP Officers conducting unconstitutional searches *at the border*, as it has for state officials conducting an unconstitutional search *inside the U.S,* in 42 U.S.C. §1983. Fifth, in 6 U.S.C, §345, Congress created the Department of Homeland Security ("DHS") Officer of Civil Rights and Civil Liberties to investigate allegations of civil rights abuses by DHS employees, including racial profiling, but it did not authorize suits for damages for such abuses, indicating that Congress wants DHS employees who commit civil rights abuses to be disciplined or criminally prosecuted, but not *sued for damages*. Sixth, Congress has provided an administrative appeals system for airport passengers "wrongly delayed" because they were wrongly identified as a security risk by TSA employees, 19 U.S.C. §§44928, 44903, but again, Congress did not create a damages remedy against TSA employees or CBP Officers who commit such wrongs. Seventh, in some cases a "general *Bivens* cure" would be "worse than the disease" by making federal employees too concerned about personal liability. *Wilkie v. Robbins*, 551 U.S. 537, 561-62 (2007). Unlike FBI officers, who infrequently conduct personal searches but who have many other duties, CBP Officers inspect *every international traveler* who arrives here *every day* and could potentially search each one. If during every such search a CBP officer is concerned about personal liability, his or her duties will suffer far too much. Special factors counselling hesitation must be considered in the aggregate, *Chappell v. Wallace*, 462, U.S. 296, 304 (1983), and the foregoing special factors, considered in the aggregate, *overwhelmingly* demonstrate that in this case, "*Congressionally uninvited* intrusion is [an] inappropriate action for the Judiciary to take." *Abbasi* at 1862. Our brief will be ready at the pre-motion conference, the plaintiff should have three weeks to submit opposing papers and the government should have one week to reply.

4

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:  ss/
 Charles S. Kleinberg
Assistant U.S. Attorney
(718) 254-6012